**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

FRANCISCO MARTIN ESTEBAN RODAS,

Petitioner,

v.

DEPARTMENT OF HOMELAND SECURITY,

Respondent.

Case No. 5:26-cv-03688-AJR

**MEMORANDUM DECISION AND ORDER DENYING PETITION**

## I.

## INTRODUCTION

On July 1, 2026, Petitioner Francisco Martin Esteban Rodas (A# 066-772-824) ("Petitioner"), an immigration detainee proceeding *pro se*, filed a Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2241 (the "Petition"), challenging his detention in immigration custody. (Dkt. 1.) On July 13, 2026, Respondent Department of Homeland Security ("DHS") ("Respondents") filed an Answer to the Petition (the "Answer"). (Dkt. 9.) Petitioner had until July 27, 2026 to file a reply to the Answer, but has not done so as of today. (Dkt. 4.) On August 10, 2026, Petitioner filed a Motion for Temporary Restraining Order. (Dkt. 12.) On August 14, 2026, the Court

directed Respondent to file a response advising whether Petitioner is subject to a removal order, and if so, whether the order is subject to appeal. (Dkt. 14.) On August 17, 2026, Respondent filed a Response re Removal Order (the "Response"). (Dkt. 15.) The parties have consented to proceed before the undersigned U.S. Magistrate Judge for all purposes. (Dkts. 10, 13.) **For the reasons set forth below, the Court concludes that the Petition must be DENIED.**

## II.
## FACTUAL BACKGROUND

Petitioner is a native and citizen of Guatemala. (Dkt. 9-1 at 1.) On or about May 27, 2019, Petitioner entered the United States at or near Los Angeles, California as a lawful permanent resident. (Id. at 2.) On September 21, 2023, Petitioner was convicted in the San Diego County Superior Court of gross vehicular manslaughter while intoxicated in violation of California Penal Code § 191.5(b). (Id. at 3.) Petitioner was sentenced to a total sentence of six years and four months in prison. (Id.)

On August 31, 2025, immigration authorities received notification from the California Men's Colony that Petitioner was in their custody. (Id. at 2.) On October 26, 2025, immigration authorities took Petitioner into custody immediately upon his release from the California Men's Colony. (Id.) Immigration authorities served Petitioner with a Form I-200 Warrant for Arrest. (Id.) Immigration authorities charged Petitioner with being removable under Immigration and Nationality Act ("INA") Section 237(a)(2)(A)(i) based on his conviction for a crime involving moral turpitude committed within five years after admission for which a sentence of one year or longer may be imposed. (Id. at 3.)

On December 18, 2025, an Immigration Judge ordered Petitioner removed to Guatemala. (Dkt. 15-1 at 1-2.) On January 9, 2026, Petitioner timely filed an appeal with the Board of Immigration Appeals ("BIA"). (Dkt. 15-2.) Petitioner's appeal is

currently pending. (Dkt. 15 at 2.)

On June 24, 2026, Petitioner received a bond hearing pursuant to Rodriguez v. Robbins, 804 F.3d 1060, 1089 (9th Cir. 2015), rev'd sub nom. Jennings v. Rodriguez, 583 U.S. 281 (2018). (Dkt. 9-2.) The Immigration Judge denied bond as follows:

> "Rodriguez Bond – Burden: Department
>
> Court finds that the Department has met their burden to demonstrate that Respondent, if released, would pose a danger to the community. In the alternative, the Court finds that the Department has met their burden to demonstrate that Respondent, if released, would pose such a significant risk of flight that no amount of bond or alternatives to detention would be sufficient to mitigate.
>
> The evidentiary record admitted without objection indicates that the Respondent was arrested and convicted of gross vehicular manslaughter while intoxicated and received a sentence of over 6 years. The evidentiary record also indicates that this conviction occurred in 2023. Respondent's testimony indicates that he collided with a motorcycle after having consumed alcohol to the degree that he was incapable of safely operating his vehicle. Respondent's testimony indicates that he left the scene after the accident leaving the person on the motorcycle dead or dying on the side of the road and failed to render any aid or contact any emergency services. The individual Respondent collided with died as a result of injuries sustained due to Respondent's criminal behavior. Respondent indicates that the police located him because the license plate of his car came off as a result of the collision and was located at the scene of the crash. The record also reflects that the Court ordered Respondent removed. The order is on appeal to the Board of Immigration Appeals.
>
> Danger to the Community:
>
> The Court considers not only the nature of Respondent's criminal offense, but

"also the specific circumstances surrounding [Respondent's] conduct." Matter of Siniauskas, 27 I&N Dec. 207, 208–09 (BIA 2018); Matter of Guerra, 24 I&N Dec. 37, 40 (BIA 2006) (stating that relevant factors in determining whether an alien should be released from immigration custody include how extensive, recent, and serious the alien's criminal activity is).

The Court may not "look behind the fact of conviction and relitigate the ultimate question of an alien's guilt or innocence." Matter of C-M-M-, 29 I&N Dec. 141, 142 (BIA 2025) (citing Matter of Roberts, 20 I&N Dec. 294, 301 (BIA 1991)).

While the Court "may consider a State court's decision as to dangerousness and the amount of bail that was set in criminal proceedings," the Court "does not owe a State court custody order deference in immigration bond proceedings." Matter of Choc-Tut, 29 I&N Dec. 48, 50 (BIA 2025) ("The legal standards for bail in State court may be different than in Immigration Court and there may be a variety of reasons why an Immigration Judge may or should reach a different determination than a State court judge. It is for the Immigration Judge to make his or her own determination as to dangerousness under the custody redetermination provisions of the INA and applicable precedent.").

Driving under the influence "represents a grave danger to the community and is a significant adverse consideration in bond proceedings." Matter of Choc-Tut, 29 I&N Dec. 48, 50 (BIA 2025). Indeed, "[d]runk driving is an extremely dangerous crime" that takes "a grisly toll on the Nation's roads, claiming thousands of lives, injuring many more victims, and inflicting billions of dollars in property damage every year." Matter of Siniauskas, 27 I&N Dec. 207, 208 (BIA 2018). "[T]he very nature of the crime of [driving while intoxicated] presents a 'serious risk of physical injury' to others[.]" Id.; see also Marmolejo-Campos v. Holder, 558 F.3d 903, 913 (9th Cir. 2009) (noting that

"the dangers of drunk driving are well established"). Thus, driving under the influence "is a significant adverse consideration in bond proceedings." Matter of Siniauskas, 27 I&N Dec. 207, 209.

Respondent's recent offense is a "better indication of [Respondent's] future conduct than [Respondent's] assurances to the contrary." Matter of Siniauskas, 27 I&N Dec. 207, 209 (BIA 2018). In other words, the recency of Respondent's criminal conduct is indicative of future dangerousness. Matter of Guerra, 24 I&N Dec. 37, 40 (BIA 2006); Matter of Roberts, 20 I&N Dec. 294, 303 (BIA 1991) (noting that an alien's "assurances" alone are not sufficient to "show genuine rehabilitation").

Flight Risk:

Respondent's family and community ties to the United States, proposed sponsor, fixed address, and application for relief, specifically the pending appeal before the BIA, do not sufficiently mitigate Respondent's risk of flight. Matter of C-M-M-, 29 I&N Dec. 141, 143 (BIA 2025).

The Court concludes that "no monetary bond, even if coupled with alternatives to detention, would be sufficient" to ensure Respondent's appearance at future immigration hearings and, if necessary, surrender for removal from this country. Matter of Akhmedov, 29 I&N Dec. 166, 168 (BIA 2025).

Respondent's "eligibility for relief is speculative." Matter of C-M-M-, 29 I&N Dec. 141, 143–44 (BIA 2025); Matter of E-Y-F-G-, 29 I&N Dec. 103, 104–05 (BIA 2025) (finding an alien a flight risk despite relief being granted); Matter of R-A-V-P-, 27 I&N Dec. 803, 806 (BIA 2020) ("Even for aliens who are found to have a credible fear, a grant of asylum is uncertain, in part because the legal standard for establishing eligibility for asylum is higher than that for a credible fear."); see also Matter of Andrade, 19 I&N Dec. 488, 490 (BIA 1987) ("A[n alien] with a greater likelihood of being granted relief from deportation

has a greater motivation to appear for a deportation hearing than one who, based on a criminal record or otherwise, has less potential of being granted such relief.”).”

(Id. at 1-4.)

## III.
## SUMMARY OF PETITIONER’S CLAIMS

Petitioner’s first claim for relief (Ground One) is that his continued detention violates his due process rights under Zadvydas v. Davis, 533 U.S. 678, 689 (2001) because there is no significant likelihood that he will be deported in the reasonably foreseeable future. (Dkt. 1 at 6.) Petitioner’s second claim for relief (Ground Two) is that immigration authorities violated his due process rights by detaining him without prior notice or an opportunity to be heard. (Id.) Petitioner’s third claim for relief (Ground Three) is that his detention beyond six months violates his due process rights. (Id.) Petitioner’s fourth claim for relief (Ground Four) is that his continued detention without consideration of alternatives to detention violates his due process rights. (Id. at 7.) Petitioner seeks release from custody. (Id.)

In the Motion for Temporary Restraining Order, Petitioner also contends that his bond hearing was “unfair” because “the immigration judge did not give [P]etitioner the chance to explain his side in court.” (Dkt. 12 at 2.) Petitioner also repeats his arguments from the Petition that his continued detention violates his due process rights. (Id. at 7-13.) Petitioner seeks release from custody. (Id. at 23.)

## IV.
## LEGAL STANDARD

The Due Process Clause prohibits deprivations of life, liberty, and property without due process of law. See U.S. Const., amend. V. There is no question that these protections extend to noncitizens present in the United States. See, e.g., Trump

v. J.G.G., 604 U.S. 670, 673 (2025) (*per curiam*) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." (internal quotation marks omitted)); Zadvydas, 533 U.S. at 693 ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."); Hussain v. Rosen, 985 F.3d 634, 642 (9th Cir. 2021) ("The Fifth Amendment entitles aliens to due process of law in deportation proceedings." (internal quotation marks and brackets omitted)). Indeed, "the government's discretion to incarcerate noncitizens is always constrained by the requirements of due process . . . ." Hernandez v. Sessions, 872 F.3d 976, 981 (9th Cir. 2017).

Due process "is a flexible concept that varies with the particular situation." Zinermon v. Burch, 494 U.S. 113, 127 (1990). Indeed, the Due Process Clause provides both procedural and substantive protections. See, e.g., Regino v. Staley, 133 F.4th 951, 959 (9th Cir. 2025) ("This clause protects individuals against two types of government action: violations of substantive due process and procedural due process." (internal quotation marks omitted)). To determine whether detention violates procedural due process, courts frequently apply the three-part test set forth in Mathews v. Eldridge, 424 U.S. 319 (1976). See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022) (collecting cases and applying the Mathews test to a constitutional challenge to detention pursuant to 8 U.S.C. § 1226(a)). Under Matthews, courts weigh the following three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Mathews, 424 U.S. at 335; see also id. at 332 ("Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the

Due Process Clause of the Fifth or Fourteenth Amendment.”).

In addition to the procedural protections of the Due Process Clause, “[s]ubstantive due process protects individuals from state action that interferes with fundamental rights.” Regino, 133 F.4th at 959-60. Governmental action that infringes a fundamental right is constitutional only if “the infringement is narrowly tailored to serve a compelling state interest.” Reno v. Flores, 507 U.S. 292, 302 (1993). By contrast, governmental action that does not infringe a fundamental right survives “substantive-due-process scrutiny so long as [the action is] rationally related to legitimate government interests.” Stormans, Inc. v. Wiesman, 794 F.3d 1064, 1085 (9th Cir. 2015) (internal quotation marks omitted). To assess whether there has been a violation of a fundamental right, courts must begin with “a careful description of the asserted fundamental liberty interest.” Washington v. Glucksberg, 521 U.S. 702, 721 (1997) (internal quotation marks omitted). With that careful description in mind, courts must then decide whether the asserted interest is “objectively, deeply rooted in this Nation’s history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if it was sacrificed.” Khachatryan v. Blinken, 4 F.4th 841, 858 (9th Cir. 2021) (internal quotation marks and brackets omitted).

## V.

## ANALYSIS

As an initial matter, the record reflects that Petitioner was initially arrested for and convicted of gross vehicular manslaughter while intoxicated in violation of California Panel Code § 191.5(b). (Dkt. 9-1 at 3.) Petitioner was sentenced to a total sentence of six years and four months in prison. (Id.) On August 31, 2025, immigration authorities received notification from the California Men’s Colony that Petitioner was in their custody. (Id. at 2.) On October 26, 2025, immigration authorities took Petitioner into custody immediately upon his release from the

California Men's Colony. (Id.) Immigration authorities served Petitioner with a Form I-200 Warrant for Arrest. (Id.) Immigration authorities charged Petitioner with being removable under Immigration and Nationality Act ("INA") Section 237(a)(2)(A)(i) based on his conviction for a crime involving moral turpitude committed within five years after admission for which a sentence of one year or longer may be imposed. (Id. at 3.)

Based on this record, the Court concludes that immigration authorities had a lawful basis to take Petitioner into custody. See 8 U.S.C. § 1226(a) ("On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States."); 8 C.F.R. § 287.7(a) ("Any authorized immigration officer may at any time issue a Form I-247, Immigration Detainer-Notice of Action, to any other Federal, State, or local law enforcement agency."); Marks v. Clark, 2008 WL 5516506, at *2 (W.D. Wash. Oct. 7, 2008) ("ICE had proper authority to arrest and detain petitioner on April 11, 2006, based on the March 23, 2006, immigration detainer and the August 15, 2005, Notice to Appear and warrant of arrest, and his detention is not unlawful for that reason."), report and recommendation adopted, 2009 WL 123263 (W.D. Wash. Jan. 15, 2009). Accordingly, the Court concludes that Petitioner's claims challenging his initial detention by immigration authorities fail.

The Court now turns to Petitioner's claims challenging his ongoing detention. Petitioner is currently detained under 8 U.S.C. § 1226 because he is not subject to a final order of removal. (Dkt. 15-1; Dkt. 15-2; Dkt. 15 at 2.) Therefore, Petitioner's claim for relief from prolonged detention under Zadvydas fails because Zadvydas only applies once there is a final order of removal. See, e.g., Zheng v. Gonzales, 2007 WL 2310036, at *3 (W.D. Wash. Aug. 6, 2007) ("Zadvydas is inapplicable because petitioner's immigration proceedings were reopened by the Immigration Court and she is no longer subject to a final order of removal."). Once Petitioner's appeal of his removal order concludes and the order is final, Petitioner can then invoke his right to

relief under Zadvydas if there is no significant likelihood that Petitioner will be removed in the reasonably foreseeable future.

Until there is a final order of removal, Petitioner's protection against prolonged detention is his right to a bond hearing after 180 days in custody pursuant to Rodriguez v. Robbins, 804 F.3d 1060, 1089 (9th Cir. 2015), rev'd sub nom. Jennings v. Rodriguez, 583 U.S. 281 (2018). The record reflects that Petitioner received a Rodriguez bond hearing on June 24, 2026. (Dkt. 9-2.) Petitioner contends that his bond hearing was "unfair" because "the immigration judge did not give [P]etitioner the chance to explain his side in court." (Dkt. 12 at 2.) The Court's ability to review the Immigration Judge's determination at the bond hearing is limited to review for abuse of discretion. See C.A.R.V. v. Wofford, 2026 WL 241823, at *3 (E.D. Cal. Jan. 29, 2026) ("In constitutional challenges to an IJ's detention determination, a habeas court generally reviews mixed questions of fact and law under an 'abuse of discretion' standard."); see also Martinez v. Clark, 124 F.4th 775, 783 (9th Cir. 2024). Based on the current record, the Court cannot conclude that the Immigration Judge's determination that Petitioner represents a danger to the community constitutes an abuse of discretion. (Dkt. 9-2 at 2.) This determination was supported by Petitioner's conviction for gross vehicular manslaughter while intoxicated. (Id.) Accordingly, Petitioner's claim challenging the determination at his bond hearing must fail.

In sum, the Court concludes that Petitioner has not presented a viable claim challenging either his initial arrest or continued detention. If Petitioner remains in custody after his removal order becomes final and he is not promptly removed, Petitioner can file a new habeas petition invoking his right to relief under Zadvydas if there is no significant likelihood that Petitioner will be removed in the reasonably foreseeable future.

## VI.

## CONCLUSION

Based on the foregoing, the Court concludes that the Petition must be DENIED.

IT IS SO ORDERED.

DATED: August 19, 2026

HON. A. JOEL RICHLIN
UNITED STATES MAGISTRATE JUDGE